# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# NEW BERN DIVISION

IN RE:

**ROBERT W. STEELE, II,**                                     **CASE NO. 17-03844-5-JNC**
                                                                              **CHAPTER 11**
                              **DEBTOR.**

---

**SWIFT FINANCIAL CORPORATION t/a
SWIFT CAPITAL,**

                                             *Plaintiff,*

                              **vs.**                                     **ADV. PRO. NO. 17-00081-5-JNC**

**ROBERT W. STEELE, II,**

                                             *Defendant*.

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Debtor-Defendant ROBERT W. STEELE, II ("Defendant" or "Debtor"), by and through his undersigned counsel, submits this Memorandum of Law in Support of Motion to Dismiss (the "Memorandum"), setting forth the bases for which the Court should dismiss, with prejudice, the Complaint to Determine Dischargeability of a Debt [D.E. 1] (the "Complaint") filed by Plaintiff SWIFT FINANCIAL CORPORATION t/a SWIFT CAPITAL ("Plaintiff") in the above-captioned adversary proceeding.

## STATEMENT OF THE CASE

On August 7, 2017 (the "Petition Date"), the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Case"). This Adversary Proceeding was

commenced by Plaintiff's filing of the Complaint on November 6, 2017, which raises four separate claims or causes of action requesting that the Court make the determination that the debt owed to Plaintiff by Defendant is, and should be, nondischargeable in the Bankruptcy Case pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) respectively.

## STATEMENT OF THE FACTS

There are few specific facts alleged in the Complaint that support the Plaintiff's claims or are relevant to the present Motion to Dismiss, but the pertinent factual allegations in the Complaint can be summarized as follows:

- Plaintiff is a cash advance company, engaged in the business of "purchasing" the future accounts receivable of businesses at a discount in exchange for a contractual right of repayment. (Complaint ¶ 5).

- The Defendant operated the business RSI, Inc. ("RSI"). (Complaint ¶ 6).

- In July 2016, RSI entered into a FUTURE RECEIVABLES SALE AGREEMENT with Plaintiff "to obtain funding for [RSI's] business operations." (Complaint ¶ 7). The Future Receivables Sale Agreement is attached to the Complaint as Exhibit A and is incorporated herein by reference (the "Agreement").

- The Agreement provided that Plaintiff would pay $250,000.00 to RSI for the "purchase" of "the future receivables of RSI" in the total amount of $314,750.00 and that "Plaintiff would receive payment via ACH debit of RSI's bank account." (Complaint ¶ 12). The Agreement provided that these ACH debtirs were to be made daily in the amount of $1,311.46. (Complaint ¶ 8 & Agreement, Page 1).

- The Defendant "personally guaranteed RSI's performance of the Agreement," and knew that the Agreement was conditioned upon Plaintiff's ability to debit the bank account of RSI. (Complaint ¶¶ 9, 13).

- To induce Plaintiff to purchase the receivables of RSI, Defendant provided "information about the business of RSI, accounts receivable information, a balance sheet indicating accounts receivable of $53,032.77, profit and loss information, other information and documents regarding the finances, assets, liabilities and operations of RSI, and information concerning ongoing construction projects." (Complaint ¶ 10).

- To induce Plaintiff to purchase the receivables of RSI, Defendant made verbal and written representations to Plaintiff, "concerning the business, its financial position, its receivables, and other matters," which the Complaint alleges "upon information and belief were false and were known to be false by [Defendant]." (Complaint ¶ 11).

- Plaintiff debited RSI's bank account as provided in the Agreement for some period of time.

- At some point after the debits began, Defendant and RSI were advised by debt relief agencies, namely Creditors' Relief, to discontinue the debits to Plaintiff from the account of RSI, and Defendant did so, and as part of the arrangement with the credit relief agencies, Defendant allowed Creditors' Relief and another debt relief agency, Corporate Turnaround "to debit the Debtor's and/or RSI's bank account." Defendant also refused to provide information to Plaintiff regarding the finances and receivables of RSI.  (Complaint ¶¶ 14–16).

- Defendant created RWS Builders, Inc. ("RWS"), which is an identical business to RSI, and transferred assets of RSI to RWS without consideration for the purpose of avoiding creditors of RSI and getting a fresh start.  (Complaint ¶¶ 17–18).

- On the Petition Date and under the terms of the Agreement, RSI and Defendant were "indebted to Plaintiff in the sum of  . . . $291,074.37 (the "Debt")." (Complaint ¶ 3).

In addition to the limitedly specific factual allegations summarized above, Plaintiff makes several generic allegations regarding Defendant's intent and state of mind when taking the actions set forth above, which are provided below for convenience:

- "Debtor took all of [the actions set forth above] knowingly and intentionally so that Plaintiff would not receive the payments to which it was entitled pursuant to the Agreement and in order to deny Plaintiff possession and recovery of the future receivables rightfully belonging to Plaintiff and for the purpose of defrauding Plaintiff." (Complaint ¶ 19).

- "Debtor acted maliciously with the intent to harm Plaintiff." (Complaint ¶ 20).

- "Debtor misrepresented his ability and intention to repay the funds provided by Plaintiff."  (Complaint ¶ 21).

## <u>LEGAL STANDARD OF REVIEW FOR RULE 12(b)(6) MOTION TO DISMISS</u>

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the statement of a claim for relief.  In general, whether a complaint sufficiently states a claim upon which relief can be granted is governed by the Supreme Court's plausibility pleading framework. See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). The Supreme Court held that Rule 8 of the Federal Rules of Civil Procedure requires the non-moving party to show plausible factual allegations, accepted as true, to "state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  <u>Id.</u> at 556.  In so doing, the Court confirmed that the standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957) (the Supreme Court case that had defined the Rule 8 pleading standard prior to <u>Bell Atlantic Corp. v. Twombly</u>), should not be followed in any context.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

> Two working principles underlie our decision in *Twombly*.  **First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.** *Id.,* at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.,* at 556, 127 S.Ct. 1955.  Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  490 F.3d, at 157–158.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> **In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.**

Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009) (emphasis added).  The law is clear that a Complaint that merely recites the elements of a cause of action "stops short of the line between possibility and plausibility" and must be dismissed.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).  Significantly, in evaluating whether the pleading is sufficient, only the well-pleaded facts are construed liberally in the Complainant's favor: "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); Shore Markets, Inc. v. J.P. Assocs. Ltd ., 213 F.3d 175, 180 (4th Cir.2000).

Federal Rule of Civil Procedure 9(b) provides that "in all averments of fraud or mistake, the circumstance constituting fraud or mistake shall be stated with particularity."  "To comply with this particularity requirement, a plaintiff must plead the 'time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'" McGinnis v. Fatone (In re Fatone), Case No. 13–00081–8–RDD, AP Case No. 13-00085-8-RDD, 2013 WL 5798999, at *2 (Bankr. E.D.N.C. Oct. 25, 2013) (citing Riley v. Murdock, 828 F.Supp. 1215, 1225 (E.D.N.C. 1993)).  A complaint that paints a "general, vague picture of fraud with most of the allegations being legal conclusions rather than specific statements of fact . . . . does not satisfy the requirements of Rule 9(b)." Riley v. Murdock, 828 F.Supp. at 1225; see, e.g., In re Allou Distributors, Inc., 387 B.R. 365 (Bankr. E.D.N.Y. 2008) (explaining that to satisfy the pleading requirements of Rule 9(b), a

complaint must allege with some specificity the acts constituting fraud and that conclusory allegations simply stating that defendant's conduct was fraudulent or deceptive are not enough).

## ARGUMENT

**I.    THE "DEBT" WAS INCURRED, AND THE FUNDING WAS OBTAINED, ON JULY 6, 2016, AND THEREFORE, WITH RESPECT TO THE FIRST AND SECOND CAUSES OF ACTION UNDER 11 U.S.C. § 523(a)(2), PLAINTIFF CANNOT RELY ON ALLEGATIONS OCCURING AFTER JULY 6, 2016.**

11 U.S.C. § 523(a)(2) provides, in relevant part, that an individual debtor will not be discharged from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, *to the extent obtained by*—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

B) use of a statement in writing—

(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive

11 U.S.C. § 523(a)(2)(A)–(B).   As a threshold matter, when considering claims under § 523(a)(2), it must be determined what debt the complaining creditor claims to be nondischargeable and when the money, property, service, or other enumerated item underlying that debt was obtained by the Debtor.

The Complaint specifically defines the "Debt" that it is claiming to be nondischargeable as the $291,074.37 owed under the Agreement.  (Complaint ¶ 4).  Because the debt in this case is the Debt owed under the Agreement, it is inarguable that was incurred or "obtained" by the

Debtor, for purposes of § 523(a)(2), at the time the Agreement was executed and the funding was provided to the Debtor's former corporation, RSI, pursuant to the terms of the same. This is reiterated and confirmed throughout the Complaint. For example, Plaintiff alleges that it "reasonably relied on Debtor's misrepresentations in entering into the [Agreement]" which allegation is recited verbatim with respect to the First Cause of Action under § 523(a)(2)(A), Complaint ¶ 26, and the Second Cause of Action under § 523(a)(2)(B), Complaint ¶ 33. Similarly, the Plaintiff alleges that "[d]uring the application process, Debtor provided financial information to Plaintiff, upon which Plaintiff reasonably relied in agreeing to enter into the [Agreement] and provide funding." (Complaint ¶ 30.) These are a few of the numerous allegations that clearly contemplate and take as fact that the money or property "obtained" was the funding provided to RSI at the time of execution, and pursuant to the terms, of the Agreement. Therefore, any fraud, misrepresentation, statement in writing that could have allowed the Debtor to "obtain" the funding, could only have happened prior to the execution of the Agreement.

## II.   PLAINTIFF HAS FAILED TO ALLEGE ANY FACTS SUPPORTING A CLAIM UNDER 11 U.S.C. § 523(a)(2) OTHER THAN STATEMENTS REPECTING THE DEBTOR'S OR AN INSIDER'S FINANCIAL CONDITION, AND THEREFORE PLAINTIFF'S FIRST CAUSE OF ACTION UNDER 11 U.S.C. § 523(a)(2)(A) MUST BE DISMISSED

The statutory language and case law are clear that the dischargeability exception for debts for money obtained by debtor's "false pretenses, false representation, or actual fraud" provided for in 11 U.S.C. § 523(a)(2)(A) and the exception for debts for money obtained by debtor's materially false statements in writing respecting his or an insider's financial condition pursuant to 11 U.S.C. § 523(a)(2)(B), are mutually exclusive, and to extent that allegedly fraudulent statement is one respecting debtor's or insider's financial condition, the creditor must proceed

under the later and show that debtor's fraudulent statement was in writing.  Ritter v. Smith (In re Smith), 517 B.R. 793, 796 (Bankr. E.D. Mich. 2014) ("11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(2)(B) are mutually exclusive: '[a]ll statements regarding a debtor's financial condition, whether written or oral, are expressly excluded from subsection (A). Rather, such a creditor must proceed under subsection (B) and satisfy the requirement that the statement of financial condition be in writing.'" (quoting Prim Capital Corp. v. May (In re May), 2007 WL 2052185, at *5 (6th Cir. BAP July 19, 2007)); see, e.g., Field v. Mans, 516 U.S. 59, 66, (1995) ("[§ 523(a)(2)(A)] applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition)"); In re Owens, 549 B.R. 337 (Bankr. D. Md. 2016) (acknowledging the factual distinctions necessary for stating a claim under, and the mutual exclusion of, the two exceptions); In re Dunbar, 474 B.R. 14 (Bankr. D. Mass. 2012) (same).

In this case, the Complaint contains only two factual allegations that are statements of fact regarding the Debtor's representations prior to execution of the Agreement which are not otherwise unsupported legal conclusions that the Court should not accept is true for purposes of Rule 12(b)(6).  See Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009); see also Adcock v. Freightliner, LLC, 550 F.3d 369, 374 (4th Cir. 2008) (stating that mere legal conclusions do not warrant automatic assumption of truth by the court).  In paragraph 10 of the Complaint, Plaintiff states that to induce Plaintiff to purchase the receivables of RSI, Defendant provided "information about the business of RSI, accounts receivable information, a balance sheet indicating accounts receivable of $53,032.77, profit and loss information, other information and documents regarding the finances, assets, liabilities and operations of RSI, and information concerning ongoing construction projects." (Complaint ¶ 10.)  Similarly, paragraph 11 of the

Complaint provides that to induce Plaintiff to purchase the receivables of RSI, Defendant made verbal and written representations to Plaintiff, "concerning the business, its financial position, its receivables, and other matters," which the Complaint alleges "upon information and belief were false and were known to be false by [Defendant]."  (Complaint ¶ 11).  Because Plaintiff does not allege that the Debtor made any statements, provided any documents, or took any other action prior to execution of the Agreement and the funding being obtained other than statements an insider's financial condition, Plaintiff is required to proceed under 11 U.S.C. § 523(a)(2)(B), and the First Cause of Action under 11 U.S.C. § 523(a)(2)(A) must be dismissed.

### III.   PLAINTIFF FAILS TO ALLEGE WITH PARTICULARITY ANY FACTS SUPPORTING THAT DEFENDANT MADE FALSE STATEMENTS IN WRITING REPECTING THE DEBTOR'S OR AN INSIDER'S FINANCIAL CONDITION, AND THEREFORE PLAINTIFF'S SECOND CAUSE OF ACTION UNDER 11 U.S.C. § 523(a)(2)(B) MUST BE DISMISSED

The law is clear that more rigorous pleading standard provided by Rule 9(b) must be satisfied when a complaint or cause of action alleges fraud applies to causes of action under 11 U.S.C. § 523(a)(2).  See, e.g., McGinnis v. Fatone (In re Fatone), Case No. 13–00081–8–RDD, AP Case No. 13-00085-8-RDD, 2013 WL 5798999, at *2 (Bankr. E.D.N.C. Oct. 25, 2013) (applying heightened pleading standard to claim under 11 U.S.C. § 523(a)(2)); Ferguson v. Zering (In re Zering), 560 B.R. 671 (Bankr. M.D.N.C. 2016) (same); Camp Flintlock, Inc. v. Stephenson (In re Stephenson), Case No. 12-00357-8-JRL, AP No. 12-00228-8-JRL, 2013 WL 593900, at *5 (same).  "To comply with this particularity requirement, a plaintiff must plead the 'time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'" McGinnis v. Fatone (In re Fatone), Case No. 13–00081–8–RDD, AP Case No. 13-00085-8-RDD, 2013 WL 5798999, at *2 (citing Riley v. Murdock, 828 F.Supp. 1215, 1225 (E.D.N.C. 1993)).  A complaint that paints

a "general, vague picture of fraud with most of the allegations being legal conclusions rather than specific statements of fact . . . . does not satisfy the requirements of Rule 9(b)." Riley v. Murdock, 828 F.Supp. 1215, 1225 (E.D.N.C. 1993).

In the context of § 523(a)(2)(B), this requires, at a minimum, that a complaint include allegations of fact as to how or why the written statements in question are false or fraudulent, and it will not suffice for the complaining party to simply make a broad, conclusory statement that the written statements are false or untrue.   See, e.g., Iwaszczenko v. Neale (In re Neale), 440 B.R. 510, 522 (Bankr. W.D. Wis. 2010) ("When considering a motion to dismiss under Rule 12(b)(6), the Court's task is to examine the factual allegations of the complaint. Where fraud is alleged, the creditor must plead his claims "with particularity," and one component of that is to provide the "content" of the alleged misrepresentation. A complaint which fails to identify the fraudulent statements *or the reasons why they are fraudulent* does not satisfy the particularity requirements of Rule 9(b)." (citations omitted)); S & L Enters. I, LLC v. Eisaman (In re Eisaman), 387 B.R. 219, 222 (Bankr. N.D. Ind. 2008) ("A complaint which fails to identify the fraudulent statements or the reasons why they are fraudulent does not satisfy the particularity requirement of Rule 9(b)." (citing Skycom Corp. v. Telstar Corp., 813 F.2d 810, 818 (7th Cir. 1987)); Mannheim Automotive Fin. Serv. V. Park (In re Park), 314 B.R. 378, 383–84 (Bankr. N.D. Ill. 2004) ("That count merely alleges that Park submitted his financial statement, his tax return, and Auto Plaza's tax return, that MAFS and MSC relied on these documents to 'make loans or continue[ ] to advance credit," and that the documents "were false."   Count II does not say when the financial statements and tax returns were submitted, how they were submitted, what precisely was obtained as a result, and when. More important, Count II nowhere discloses just what aspect of the financial statements and tax returns—22 pages in all—was in fact "false,"

a critical omission. As with Count I, more detail is necessary for Count II to satisfy Rule 9(b)." (citations omitted)); Jou v. Adalian (In re Adalian), 474 B.R. 150, 161 (Bankr. M.D. Pa. 2012) ("[A]llegations of fraud must be plead with particularity. What particular false representations were made to Jou at the time the loans were made? Or, what particular conduct created a false impression to him? It is not sufficient to merely imply that a fraud occurred. A complaint must demonstrate the plausibility of its claims. The Complaint has plead facts that are merely consistent with Adalian's liability, however, it has stopped short of demonstrating the plausibility of these claims. The Complaint has not alleged specific statements or circumstances showing false pretenses or representations were made at the time of, or prior to the execution of the notes. Nor, has the Complaint alleged specific statements or circumstances that demonstrate Adalian had an intent and purpose to deceive. While the Complaint does make general representations that Adalian failed to fully comply with his obligations under the notes and the settlement, these general representations alone are insufficient to support a claim under § 523(a)(2)(A). Accordingly, the Motion to Dismiss is granted as to the claim under § 523(a)(2).").

The Complaint in this case contains only two factual allegations regarding the Debtor's representations prior to execution of the Agreement which are not otherwise unsupported legal conclusions that are not taken as true for the purposes of Rule 12(b)(6).  See Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009); see also Adcock v. Freightliner, LLC, 550 F.3d 369, 374 (4th Cir. 2008) (stating that mere legal conclusions do not warrant automatic assumption of truth by the court).  In paragraph 10 of the Complaint, Plaintiff alleges that Defendant provided "information about the business of RSI, accounts receivable information, a balance sheet indicating accounts receivable of $53,032.77, profit and loss information, other information and documents regarding the finances, assets, liabilities and operations of RSI, and information concerning

ongoing construction projects." (Complaint ¶ 10). This broad allegation does not even allege that the documents provided to Plaintiff were false, much less identify which specific documents are alleged to false and why. Similarly, paragraph 11 provides that Defendant made verbal and written representations to Plaintiff, "concerning the business, its financial position, its receivables, and other matters," which the Complaint alleges "upon information and belief were false and were known to be false by [Defendant]." (Complaint ¶ 11). No facts are alleged as to what documents, or statements within said documents, are allegedly false or contain misrepresentations. Based on the foregoing, Plaintiff's Second Cause of Action under § 523(a)(2)(B) must be dismissed.

In addition to failing to allege any facts regarding what specific false statement or representations were contained in the written financial statements, the Complaint also fails to allege that any such falsity was material, which is a requisite element of a claim under § 523(a)(2)(B). Lyndon Property Insurance Co. v. Adams (In re Adams), 312 B.R. 576, 581 (Bankr. M.D.N.C. 2004) ("Under § 523(a)(2)(B) a debt is nondischargeable if it is for money, property, services or an extension, renewal or refinancing of credit obtained by the use of a statement in writing (1) that is materially false; (2) respecting the debtor's or an insider's financial condition; (3) that is reasonably relied upon by the creditor; and (4) that was published by the debtor with intent to deceive. In an action under § 523(a)(2)(B) the creditor has the burden of proof by a preponderance of the evidence on each of the elements required under that section of the Bankruptcy Code."); see Grogan v. Garner, 498 U.S. 279, 288 (1991); In re Stanley, 66 F.3d 664, 667 n.4 (4th Cir. 1995); In re Booker, 165 B.R. 164, 168 (Bankr. M.D.N.C. 1994); In re Showalter, 86 B.R. 877, 880 (Bankr. W.D. Va. 1988). When analyzing whether a false statement is material as required by § 523(a)(2)(B), a court must determine if the false statements

amounted to "substantial inaccuracies of the type which would generally affect a lender's decision and a statement is materially false if it portrays a substantially untruthful picture of a financial condition by misrepresenting information of the type which normally would affect the decision to grant credit." In re Adams, 312 B.R. at 584 (citing In re Candland, 90 F.3d 1466, 1470 (9th Cir.1996) and In re Furio, 77 F.3d 622, 625 (2d Cir. 1996)). Because no facts are alleged as to what specific statements were false, there is clearly no allegation that any such statements were material as required by § 523(a)(2)(B), and therefore, Plaintiff's Second Cause of Action under § 523(a)(2)(B) must be dismissed.

**IV.**     **PLAINTIFF FAILS TO ALLEGE WITH PARTICULARITY ANY FACTS SUPPORTING THAT DEFENDANT MADE FALSE STATEMENTS OR MISREPRESENTATIONS, AND THEREFORE PLAINTIFF'S FIRST CAUSE OF ACTION UNDER 11 U.S.C. § 523(a)(2)(A) MUST BE DISMISSED**

As set forth in Section III above, the law is clear that more rigorous pleading standard provided by Rule 9(b) must be satisfied when a complaint or cause of action alleges fraud applies to causes of action under 11 U.S.C. § 523(a)(2), which in the context of 523(a)(2)(A) requires at a minimum, that the complaining party "plead the 'time, place, and contents of the alleged fraudulent representation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'" McGinnis v. Fatone (In re Fatone), Case No. 13–00081–8–RDD, AP Case No. 13-00085-8-RDD, 2013 WL 5798999, at *2 (citing Riley v. Murdock, 828 F.Supp. 1215, 1225 (E.D.N.C. 1993)); see, e.g., Iwaszczenko v. Neale (In re Neale), 440 B.R. 510, 522 (Bankr. W.D. Wis. 2010); S & L Enters. I, LLC v. Eisaman (In re Eisaman), 387 B.R. 219, 222 (Bankr. N.D. Ind. 2008) ("A complaint which fails to identify the fraudulent statements or the reasons why they are fraudulent does not satisfy the particularity requirement of Rule 9(b)." (citing Skycom Corp. v. Telstar Corp., 813 F.2d 810, 818 (7th Cir. 1987)); Mannheim

Automotive Fin. Serv. V. Park (In re Park), 314 B.R. 378, 383–84 (Bankr. N.D. Ill. 2004); Jou v. Adalian (In re Adalian), 474 B.R. 150, 161 (Bankr. M.D. Pa. 2012).

Besides the vague allegations included in paragraphs 10 and 11 of the Complaint—which as discussed above, fail to allege any facts regarding what specific false statements or representations were made by the Debtor, why such representations were false, or when such representations were made, either in writing or otherwise—paragraphs 21 and 25 are the only other paragraphs of the Complaint that even arguably provides support for the contention that the Debtor made misrepresentations of the type required under §523(a)(2)(a) prior to execution of the Agreement and the funding being obtained.   Paragraph 21 makes the vague conclusory statement that "Debtor misrepresented his ability and intention to repay the funds provided by Plaintiff."  (Complaint ¶ 21).   Paragraph 25 states that "Debtor made various representations during the application process verbally and in writing which were false, known to be false by Debtor, and were done with the intent to deceive Plaintiff into providing funding."  (Complaint ¶ 25). These allegations are, like so many of the allegations in the Complaint, unsupported legal conclusions and formulaic recitations of the elements of the cause of action that warrant no assumption of truth for purposes of Rule 12(b)(6).  See Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009); see also Adcock v. Freightliner, LLC, 550 F.3d 369, 374 (4th Cir. 2008) (stating that mere legal conclusions do not warrant automatic assumption of truth by the court).  Based on the foregoing, Plaintiff has failed to sufficiently plead with particularity, as required by Rule 9(b), any specific facts regarding the statements or representations alleged to false, when such representations were made, and why such representations were false, and therefore, Plaintiff's First Cause of Action under § 523(a)(2)(A) must be dismissed.

V. **THE DEFENDANT IS NOT A "FIDUCIARY" UNDER FEDERAL BANKRUPTCY LAW AND ACCORDINGLY THE PORTION OF PLAINTIFF'S THIRD CAUSE OF ACTION BASED ON FRAUD OR DEFALCATION OF A FIDUCIARY MUST BE DISMISSED**

11 U.S.C. § 523(a)(4), excepts from discharge those debts "for fraud or defalcation" committed by one "acting in a fiduciary capacity."  In re Strack, 524 F.3d 493, 497 (4th Cir. 2008).  "To prevail under this provision, a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation."  Id. (citing Pahlavi v. Ansari (In re Ansari), 113 F.3d 17, 20 (4th Cir.1997)).  With respect to the requirement that a debtor be acting in a fiduciary capacity, this Court recently explained:

> "Case law makes clear that the broad, general definition of fiduciary – a relationship involving confidence, trust and good faith – is inapplicable in the dischargeability context. . . . Instead, § 523(a)(4) nondischargeability results only where, among other things, the fiduciary relationship between the debtor and the creditor arises in relation to an express or technical trust that pre-dates the alleged defalcation." Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274 (9th Cir. BAP 2013) (internal citations omitted). See also Edwards v. Emberton (In re Emberton), 501 B.R. 392, 398 (Bankr. D. Colo. 2013) (the term "fiduciary," as used in § 523(a)(4), has a narrow meaning, and neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor an inequality between parties' knowledge or bargaining power, is sufficient to establish a fiduciary relationship for dischargeability purposes).

Federal Insurance Co. v. Sorge (In re Sorge), Case No. 16-04142-5-JNC, AP Case No. 16-00168-5-JNC (Bankr. E.D.N.C. Feb. 6, 2017).

The sole allegation in the Complaint regarding the Debtor's capacity as a fiduciary states that by virtue of the fact that the Debtor was an officer of RSI, "Debtor owed Plaintiff a fiduciary duty to hold remaining corporate assets in trust for the benefits of its creditors."  (Complaint ¶ 36).  Because Plaintiff fails to allege any facts supporting the existence of an express or technical trust as required under 11 U.S.C. § 523(a)(4), the portion of Plaintiff's Third Cause of Action to

the extent based on "fraud or defalcation" committed by one "acting in a fiduciary capacity" must be dismissed.

Furthermore, even if the Plaintiff properly pled facts to establish there was a fiduciary relationship between the parties, any such relationship would not have predated the Agreement or the Debt incurred thereunder, and therefore, any claims based on such relationship must be dismissed.   In re Sorge, Case No. 16-04142-5-JNC, AP Case No. 16-00168-5-JNC (citing Pemstein v. Pemstein (In re Pemstein), 492 B.R. 274 (9th Cir. BAP 2013).

## VI. EVEN IF DEFENDANT IS FOUND TO BE A "FIDUCIARY" UNDER 11 U.S.C. § 523(a)(4), THE REMAINING ELEMENTS ARE NOT SUFFICIENTLY ALLEGED AND ACCORDINGLY THE PORTION OF PLAINTIFF'S THIRD CAUSE OF ACTION BASED ON FRAUD OR DEFALCATION OF A FIDUCIARY MUST BE DISMISSED

Plaintiff's Third Cause of Action based on 11 U.S.C. § 523(a)(4), appears to be based on fraud committed by one acting in a fiduciary capacity, as opposed to defalcation, based on Plaintiff's concluding paragraph of the Third Cause of Action: "Pursuant to Section 523(a)(4) of the Bankruptcy Code, any discharge of the Debtor will not release the Debtor from the Debt due to the fraud in intentionally stopping payment to Plaintiff and Debtor's other fraudulent actions as further described above."   (Complaint ¶ 39).   A cause of action for fraud while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4) requires that the circumstances surrounding the alleged fraud meet the particularity requirement of Rule 9(b).   In re Eisaman, 387 B.R. at 222–23 ("That requirement applies equally to all claims which are based upon an underlying fraud, including . . . complaints under § 523(a)(4) concerning fraud in a fiduciary capacity."   (internal citations omitted)).   Based on the reasons stated in Sections III and IV above, Plaintiff has failed to sufficiently plead any instances of fraud with particularity, and therefore, even if Debtor was acting in a fiduciary capacity as required by § 523(a)(4), Plaintiff's Third Cause of Action must

be dismissed to the extent that it is based on a fraud committed.  See In re Zering, 560 B.R. at 678 ("Plaintiff's claim pleads either fraud or defalcation while acting in a fiduciary capacity, and is unclear as to the grounds on which the claim rests. As to the first element, the Plaintiff does not allege fraud pursuant to Rule 9(b), which requires 'particularity' in pleading 'the circumstances constituting fraud or mistake,' as insofar as the Plaintiff fails to plead with sufficient particularity as to her first claim [under § 523(a)(2)], so too here does the Plaintiff fail to allege fraud with sufficient particularity.").

Alternatively, if part of the Third Cause of Action is based on defalcation, the Complaint insufficiently pleads any facts supporting that the Debtor's defalcation while acting in a fiduciary capacity gave rise to the Debt.  "To prevail under this provision, a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the *debt arose from the debtor's fraud or defalcation*."  In re Strack, 524 F.3d at 497 (citing In re Ansari, 113 F.3d at 20).  Plaintiff alleges in the Complaint in support of the claim under §524(a)(4) that "Debtor breached that duty by cutting off Plaintiff's access to the RSI bank account, allowing other creditors to debit the account and take the receivables rightfully belonging to Plaintiff, and transferring RSI's assets to another entity. All of this was done with the purpose of defrauding Plaintiff."  (Complaint ¶ 37).  Because these minimal, vague allegations are all based on actions that took place after the Debt was already incurred, they cannot and do not provide any support for finding that the Debt arose from the any defalcation committed by the Debtor.  Therefore, even if the Debtor was a  fiduciary, because Plaintiff fails to allege any facts supporting the Debt arose from the Debtor's defalcation, as required by 11 U.S.C. § 523(a)(4), the portion of Plaintiff's Third Cause of Action to the extent based on "defalcation" committed by one "acting in a fiduciary capacity" must be dismissed.

**VII.   IT IS NOT SUFFICIENTLY ALLEGED THAT THE DEBTOR EMBEZZLED FROM PLAINTIFF, AND ACCORDINGLY THE REMAINDER OF PLAINTIFF'S THIRD CAUSE OF ACTION TO THE EXTENT BASED ON EMBEZZLEMENT UNDER 11 U.S.C. § 523(a)(4) MUST BE DISMISSED**

The law is clear that a Complaint that merely recites the elements of a cause of action "stops short of the line between possibility and plausibility" and must be dismissed.  Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).  As this Court recently explained with respect to a claim for embezzlement under § 523(a)(4):

> For actions to rise to the level of "embezzlement" for purposes of § 523(a)(4), the following three elements must be shown:
> (i) the creditor entrusted money or property to the debtor;
> (ii) the debtor appropriated the money or property for a use other than that for which it was entrusted; and
> (iii) the circumstances indicate a fraudulent intent.

In re Sorge, Case No. 16-04142-5-JNC, AP Case No. 16-00168-5-JNC (citing Peavey Electronics Corp. v. Sinchak (In re Sinchak), 109 B.R. 273, 276 (Bankr. N.D. Ohio 1990)).

In this case, as part of Plaintiff's Third Cause of Action, Plaintiff makes three vague allegations, which basically amount to a recitation of the elements stated above.  In sum, the Plaintiff alleges that the Debtor "was in possession of" the receivables that were "purchased" by Plaintiff, that the Debtor appropriated the property to a use other than for which it was entrusted by Debtor by allowing debt relief agencies, Creditors' Relief and Corporate Turnaround, to debit RSI's bank account and "for other uses," and that the "totality of the circumstances in this indicate the Debtor's fraudulent conduct." (Complaint ¶ 38).  These vague statements, which are basically legal conclusions, fail to sufficiently please any of the three enumerated elements of embezzlement, that portion of Plaintiff's Third Cause of Action must be dismissed.

First, Plaintiff alleges that the Debtor was in possession of the Plaintiff's receivables, but fails to allege that the entrusted money or property to the Debtor, which is a necessary element of

embezzlement, for purposes of § 523(a)(4).  The "purchase" of RSI's "future receivables" pursuant to the Agreement does not change the fact that the future receivables of RSI, many of which by definition had not even been generated at the time the Agreement was executed, would be paid to RSI by customers, and not entrusted to the Debtor by Plaintiff. Furthermore, the Complaint states insufficient allegations regarding what property was entrusted to the Debtor beyond the general description of "future receivables purchased." See, e.g., Helfrich v. Thompson (In re Thompson), 262 B.R. 407, 411 (B.A.P. 6th Cir. 2001) (reversing and remanding because the bankruptcy court failed to make necessary "factual findings regarding: (1) what property was entrusted to the Debtor; (2) what property the Debtor appropriated and how it was misused; or (3) the amount of the debt.")

Second, Plaintiff alleges that the Debtor appropriated the receivables to use other than the use for which it was entrusted to the Debtor by allowing certain debt relief agencies to "recover the receivables" by debiting RSI's bank account and "for other uses."   (Complaint ¶ 38). Plaintiff fails to sufficiently plead this element, as the formulaic recitation set forth in the Complaint does not make any allegation regarding the use for which it was entrusted to the Debtor, which is not surprisingly considering the "future receivables" were never entrusted to the Debtor by Plaintiff.  See id.

Lastly, Plaintiff makes no allegations regarding what circumstances in this case indicate fraudulent intent, or support anything other than this being a dischargeable debt for breach of contract.  In addition to the reasons stated in Sections III and IV above regarding the Plaintiff's failure to sufficiently plead causes of action under § 523(a)(2), which are equally applicable here, all other circumstances and facts alleged in the Complaint tend to support that the Debtor lacked any fraudulent intent.  For example, the Complaint specifically states that the Debtor was advised

by a creditor relief agency to stop payments to Plaintiff, which action is the entire basis for the embezzlement claim in this case.  (Complaint ¶ 15).  In addition, by acknowledging that the Debtor stopped payments that were being debited from RSI's bank account pursuant to the Agreement, Plaintiff necessarily concedes that the payments were made for a period of time under the Agreement, which supports that the Debtor lacked any fraudulent intent.

These failures exemplify why the current case, which is factually a debtor-creditor relationship in disguise, is not an appropriate case for allegations of embezzlement.  "Where the parties' conduct indicates a debtor-creditor relation, funds that come into the hands of the debtor belong to him and his subsequent use of them is not embezzlement."  Great American Insurance Co. v. Storms (Matter of Storms), 28 B.R. 761, 765 (Bankr. E.D.N.C. 1983) (also noting that when determining whether a debtor-creditor relationship exists, "a written agreement between the parties may be refuted by the actions of the parties.").  Because the terms of the Agreement, including the fact that the Debtor remained in full control of the "purchased receivables" and payments were to be made on a set periodic basis as they would with a normal promissory note, as well as the allegations in the Complaint itself including continuously referencing stopping "payments" and the Debtor's intent to "repay" pursuant to the Agreement, all indicate that the Agreement is simply disguising a normal debt as a "purchase of receivables," there can be no embezzlement.  See id; Belfry v. Cardozo (In re Belfry), 862 F.2d 661, 662–63 (8th Cir. 1988); In re Hofmann, 144 B.R. 459, 464 (Bankr. D.N.D. 1992), aff'd sub nom. Werner v. Hofmann, 161 B.R. 998 (D.N.D. 1993), aff'd, 5 F.3d 1170 (8th Cir. 1993) ("The circumstances surrounding this case are no different than any other contractual relationships—each party hopes and expects that no problems would arise. Unfortunately, the hopes and expectations of the Werners were not met, not because of embezzlement, but simply because of the noncompliance to the specific

contractual terms. Hence, in the case at bar, there is no embezzlement, but rather a dischargeable breach of contract" (citations omitted)).

Plaintiff has failed to sufficiently plead any allegations of fact that support any of the elements of embezzlement pursuant to § 523(a)(4), and therefore, Plaintiff's Third Cause of Action must be dismissed in relevant part.

## VIII.   IT IS NOT SUFFICIENTLY ALLEGED THAT THE DEBTOR WILLFULLY OR MALICIOUSLY INJURED PLAINTIFF OR PLAINTIFF'S PROPERTY AND ACCORDINGLY, PLAINTIFF'S FOURTH CAUSE OF ACTION UNDER 11 U.S.C. § 523(a)(6) MUST BE DISMISSED

In evaluating whether the pleading is sufficient, only the well-pleaded facts are construed liberally in the Complainant's favor: "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); Shore Markets, Inc. v. J.P. Assocs. Ltd ., 213 F.3d 175, 180 (4th Cir.2000).

11 U.S.C. § 523(a)(6) excludes from discharge any debt incurred as a result of the "willful and malicious injury by the debtor to another . . . or to the property of another[.]" This Court recently thoroughly explained the standard required under this subsection:

Section 523(a)(6) of the Bankruptcy Code provides that a discharge . . . will not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In Kawaauhau v. Geiger, 523 U.S. 57 (1998), the Supreme Court clarified the § 523(a)(6) standard, establishing that because the word 'willful' modifies the word 'injury,' "nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." 523 U.S. 57, 61 (1998). In other words, the court must find an intentional injury in order to support a finding of nondischargeability under § 523(a)(6). See Cmty. Sav. Bank, Inc. v. Rountree (In re Rountree), 2002 Bankr.LEXIS 2132 (Bankr. M.D.N.C.2002).

In addition, § 523(a)(6) requires a finding that the debtor's actions were malicious. See E.L. Hamm & Assocs., Inc. v. Sparrow (In re Sparrow), 306 B.R. 812, 838 (Bankr. E.D. Va. 2003) (noting, after discussing the Geiger decision's

clarification of 'willful injury,' that "[s]ince Geiger, the malice prong of § 523(a)(6) appears unchanged"). A debtor acts with malice for purposes of § 523(a)(6) if the injurious act is committed "deliberately and intentionally in knowing disregard of the rights of another." First Nat'l Bank of Maryland v. Stanley (In re Stanley), 66 F.3d 664, 667 (1995).

Meadows v. Cofield (In re Cofield), Case No. 11-02034-8-SWH, AP Case No. 12-00227-8-JRL, 2014 WL 879684, at *2 (Bankr. E.D.N.C. Mar. 5, 2014) (internal footnote omitted). In sum, the crucial element of a claim under § 523(a)(6) in most cases will be whether or not the debtor intentionally or deliberately caused the injury being complained of, as opposed to deliberately or intentionally taking an action that happens to cause an injury. The Supreme Court explained the importance of this distinction, stating that:

> [The] more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left-hand turn without first checking oncoming traffic—could fit the description. A "knowing breach of contract" could also qualify. A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." Gleason v. Thaw, 236 U. S. 558, 562 (1915).

Geiger, 523 U.S. at 61-62.

Plaintiff alleges that by "cut[ting] off payments to Plaintiff, allow[ing] Creditors' Relief and Corporate Turnaround to debit the Debtor's and/or RSI's bank account and obtain the receivables, then form[ing] a new corporate entity to operate an identical business," the Debtor willfully and maliciously injured the "future receivables" of Plaintiff. (Complaint ¶ 15).

These allegations are the basis for a breach of contract action, which even if the breach was knowing, does not provide the basis for a claim under § 523(a)(6), because it does not provide support to the allegation that the Debtor deliberately or intentionally cause an injury. See, e.g., In re Neale, 440 B.R. at 521 ("Boiled to its essence, all the complaint indicates is that

Mr. Neale solicited investments from the plaintiff, did not repay the obligation, and has failed to provide him with requested information or documentation. While the plaintiff undoubtedly feels hurt (or injured) by the debtor's conduct, his claim did not arise as a result of an injury to him or his property."); Kingvision Pay Per View, Ltd. v. DeMarco (In re DeMarco), 250 B.R. 681, 685 (Bankr. N.D. Ill. 2000) ("While, in many instances, an action perpetrated with the intent to procure financial gain will cause a resulting loss to another party, the fact that such a loss occurs, even if such a loss is within the knowledge of the defendant, is insufficient to satisfy the stringent requirements for pleading and proving a willful and malicious injury under § 523(a)(6). The plaintiff in Kraye failed to allege that the financial injury was actually intended by Kraye, who likely sought to benefit himself by retaining the pension fund benefit payment and was likely indifferent to the losses incurred by the plaintiff. As a result, the plaintiff could not prevent discharge and this court granted Kraye's motion to dismiss the plaintiff's adversary complaint." (citations omitted)); Washington v. Robinson-Vinegar (In re Robinson-Vinegar), 561 B.R. 562, 568–69 (Bankr. N.D. Ga. 2016) ("Plaintiffs allege that the Debtor 'willfully and knowingly breached her contractual obligations' under their loan agreement by failing to repay what she owed. Although Plaintiffs allege that Debtor 'never intended to repay the loans,' the Complaint also includes statements that Debtor's 'knowingly failing to remit the amount due' after obtaining the loan and 'despite repeated representations that payments were forthcoming prior to the bankruptcy filing' that Debtor 'knew or should have known' would cause harm and amount to a nondischargeable claim under Section 523(a)(6). Such imprecise allegations demonstrate why courts must be careful simply equating a breach of contract with actions resulting in willful and malicious injury. The fact that Debtor should have known Plaintiffs would suffer loss if she did not repay the loan does not necessarily establish the type of injury in view under Section

523(a)(6)."); see also In re Isaacson, 478 B.R. 763 (Bankr. E.D. Va. 2012) (holding that for a breach of contract to give rise to an exception to discharge under § 523(a)(6), there must be tortious conduct accompanying the alleged breach).   Accordingly, Plaintiff has failed to sufficiently allege that the Debtor committed a "willful and malicious injury" to Plaintiff or its property, and therefore, the Plaintiff's Fourth Cause of Action must be dismissed.

Separately from the above reasoning, the Plaintiff has specifically alleged that the Debtor took the actions set forth in the allegations supporting the Fourth Cause of Action "for the purpose of getting a 'fresh start' and avoiding creditors, particularly Plaintiff."  (Complaint at ¶ 16).  This allegation effectively pleads Fourth Cause of Action out of court, because the Debtor cannot simultaneously take actions for the purpose of obtaining a fresh start and also for the deliberate and intention purpose of harming Plaintiff's property.

## IX.   BECAUSE THE DEBT IS NOT A "DEBT FOR" THE TYPES OF CONDUCT ENUMERATED IN 11 U.S.C. § 523(a)(4) or (a)(6),  PLAINTIFF'S THIRD AND FOURTH CAUSES MUST BE DISMISSED ENTIRELY

The law is clear that "debt for" in the context of § 523(a)(4) and (a)(6) requires that the debt itself must have originated from the types of conduct listed in the respective subsections. As the Supreme Court explained:

> Because each use of "debt for" in § 523(a) serves the identical function of introducing a category of nondischargeable debt, the presumption that equivalent words have equivalent meaning when repeated in the same statute, e.g., Ratzlaf v. United States, 510 U.S. 135, 143, 114 S.Ct. 655, 660, 126 L.Ed.2d 615 (1994), has particular resonance here. And contrary to petitioner's submission, it is of no moment that "debt for" in § 523(a)(2)(A) has as its immediate object a commodity (money, property, etc.), but in some of the other exceptions has as its immediate object a description of misconduct, e.g., § 523(a)(4) ("debt for fraud or defalcation [by a] fiduciary"). Section 523(a)(2)(A) also describes misconduct ("false pretenses, a false representation, or actual fraud"), even if it first specifies the result of that conduct (money, property, etc., obtained). The exception in § 523(a)(9) is framed in the same way, initially specifying an outcome as the immediate object of "debt for" ("death or personal injury"), and subsequently describing the misconduct giving rise to that outcome ("operation of a motor

vehicle [while] intoxicated"). It is clear that "debt for" in that provision means "debt arising from" or "debt on account of," and it follows that "debt for" has the same meaning in § 523(a)(2)(A). When construed in the context of the statute as a whole, then, § 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud.

Cohen v. de la Cruz, 523 U.S. 213, 220–21, (1998); see, e.g., In re Adalian, 474 B.R. at 163 ("Finally, the Complaint does not even posit that the alleged willful and malicious acts actually created any debt to Jou. It merely suggests that the acts made recovery for other debts more difficult. The plain language of the statute excepts from discharge 'any debt—[... ] (6) for willful and malicious injury . . . '  Nothing in the Complaint suggests that Adalian's debt to Jou is for willful and malicious injury; rather, the debt was created when Adalian borrowed money from Jou in 1991 and 1992.").

In this case, the Complaint specifically defines the "Debt" that it is claiming to be nondischargeable as the $291,074.37 owed under the Agreement.  Complaint ¶ 4.  Because the debt in this case is a "debt for" an amount owed under the Agreement, the allegations in the Complaint offered as support for Plaintiff's Third and Fourth Causes of Action—which occurred after the Debt was created, as more specifically outlined in the Section above—cannot be relied upon to make the Debt nondischargeable under § 523(a)(4) and (a)(6).  See, e.g., In re Adalian, 474 B.R. at 163 ("Actions taken later which may have made repayment of the initial debt more difficult cannot make the debt itself one for willful and malicious injury. In sum, I find that the Complaint fails to state a claim under § 523(a)(6) and the Motion to Dismiss is granted as to this count."); In re Robinson-Vinegar, 561 B.R. at 569 ("The fact that Debtor should have known Plaintiffs would suffer loss if she did not repay the loan does not necessarily establish the type of injury in view under Section 523(a)(6). Moreover, the debt itself must have originated from

willful and malicious action and such conduct, when occurring after a debt is created, is not sufficient to render the debt nondischargeable pursuant to this exception.").

In the present case, there are no allegations in the Complaint that support any conclusion other than the Debt was created and arose from the Agreement, and therefore, Plaintiff's Third and Fourth Causes of Action under 11 U.S.C. § 523(a)(4) and (a)(6) must be dismissed entirely.

## CONCLUSION

**WHEREFORE**, Defendant prays unto the Court that this matter be dismissed with prejudice and for such other and further relief as the Court deems just and proper.

Respectfully submitted this, the 12th day of January, 2018.

**STUBBS & PERDUE, P.A.**

BY:   s/Blake Y. Boyette

BLAKE Y. BOYETTE, NCSB No. 44239
bboyette@stubbsperdue.com
JOSEPH Z. FROST, NCSB No. 44387
jfrost@stubbsperdue.com

310 Craven Street
New Bern, North Carolina 28560
Telephone: (252) 633-2700
Facsimile: (252) 633-9600

*Counsel for Debtor-Defendant Robert W. Steele, II*

## <u>CERTIFICATE OF SERVICE</u>

I, Blake Y. Boyette, 310 Craven Street, PO Box 1654, New Bern, NC 28563, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the date shown below I served copies of the foregoing pleading on the parties listed below by depositing a copy in the United States mail bearing sufficient postage or electronically as indicated; and,

I certify under penalty of perjury that the foregoing is true and correct.


EXECUTED ON:  1/12/18


/s/Blake Y. Boyette
Blake Y. Boyette, NCSB No. 44239
bboyette@stubbsperdue.com
310 Craven Street
P.O. Box 1654
New Bern, NC  28563-1654
(252) 633-2700
(252) 633-9600 Facsimile

TO:
Bankruptcy Administrator                      (via U.S. Mail & CM/ECF)
434 Fayetteville Street, Suite 640
Raleigh, NC 27601


James A. Beck, II                              (via U.S. Mail & CM/ECF)
VANN ATTORNEYS, PLLC
PO Box 2445
Raleigh, NC 27602-2445
Counsel for Plaintiff


Robert W. Steele, II                          (via U.S. Mail)
201 Saint Charles Lane
Jacksonville, NC 28546